UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BARTRAM YIHNI DABNEY,


                                    Plaintiff,
                                                        9:10-CV-1109
v.                                                      (GTS/TWD)

J. PEGANO; LIVERMORE; W. DRUM;
S. HAMEL; AND R. LAMB,

                                    Defendants.
_____

APPEARANCES:                              OF COUNSEL:

BARTRAM YIHNI DABNEY, 93-A-7310
Plaintiff pro se
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

HON. ERIC T. SCHNEIDERMAN                  CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **REPORT-RECOMMENDATION and ORDER**

        This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff

Bartram Yihni Dabney, an inmate in the custody of the New York State Department of

Corrections and Community Supervision ("DOCCS"), alleges constitutional violations arising

from a May 21, 2010, incident at Great Meadow Correctional Facility ("Great Meadow").

Currently pending before the Court is Defendants' motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56. (Dkt. No. 30.) For the reasons discussed below, I

recommend that Defendants' motion be granted.

## I. FACTUAL AND PROCEDURAL SUMMARY

The claims in this action arise from an altercation between Plaintiff and Defendant

Correction Officers Hamel, Drum, and Lamb at Great Meadow. The record indicates that on

May 21, 2010, as Plaintiff and other members of his housing unit were walking to the facility

mess hall for the noon meal, Defendants Hamel, Drum, and Lamb pulled Plaintiff from the line

of other inmates for a search. (Dkt. No. 1 at 7; 30-10 at 6.) After separating Plaintiff from the

other prisoners, the corrections officers ordered Plaintiff to place his hands on the wall in

preparation for a search. (Dkt. No. 1 at 7.) Plaintiff complied with the order, and with Plaintiff's

hands positioned on the wall, Defendant Hamel began a "pat-frisk" search of Plaintiff's clothes

and person. (Dkt. No. 1 at 7; 30-10 at 6.)

At this point in the narrative, the parties' accounts diverge, placing the facts that follow in

dispute.

*Plaintiff's Allegations*

Plaintiff alleges that after removing him from the line of other inmates, Defendants

Drum, Hamel, and Lamb took him to a "blind area, away from all eyes" for the search. (Dkt. No.

1 at 7.) Once Plaintiff had his hands positioned on the wall as Defendants had instructed,

Plaintiff claims that Defendant Hamel approached him from behind, picked him up, and

slammed him to the floor. *Id.* Plaintiff states that he lost consciousness as a result of the impact.

2

*Id.* Plaintiff states that when he regained consciousness sometime later, he was lying on the floor handcuffed, with the correction officers assaulting him. (Dkt. No. 1 at 7.) As for the specifics of the assault, Plaintiff states that he remembers Defendant Drum kicking him in the face and Defendant Hamel stomping his back. *Id.* He alleges that at one point, he was slammed face-first into the floor and that while Defendants Drum and Hamel restrained him, Defendant Drum whispered "that that [*i.e.*, the assault] was for writing him or them up." (Dkt. No. 1 at 8.) At some point later during the assault, Plaintiff claims that he heard Defendant Sergeant Livermore ask Defendants Drum, Hamel, and Lamb whether Plaintiff was still breathing and when they answered that he was, Sgt. Livermore cautioned "not too hard." *Id.* At another point during the beating, Plaintiff states that he heard Defendant Lamb ask Defendant Livermore whether "this [was] good enough," and that in response, Sgt. Livermore stated, "yeah." *Id.* As for the meaning of this exchange, Plaintiff states that he later learned that Defendants Lamb and Livermore "were referring to the weapon they were going to use to justify this felonious criminal assault." *Id.*

*Defendants' Version*

In their motion, Defendants refute Plaintiff's claim that Defendants Drum, Lamb, and Hamel assaulted him. Rather, Defendants contend that Plaintiff was singled out for a search because Defendant Drum noticed bulges in Plaintiff's pockets while Plaintiff was walking with other inmates to the noon meal. (Dkt. No. 30-10 at 6, 9.) Removing him from the line of other inmates, Defendants contend that Defendant Hamel conducted a pat-frisk search of Plaintiff's clothing. *Id.* While frisking Plaintiff's pants, Defendants allege that Defendant Hamel discovered a sharpened piece of metal in Plaintiff's pocket. *Id.* Defendants state that Hamel then

called out to the other correction officers for assistance.  (Dkt. No. 30-10 at 6, 8, 9.)  Before the other correction officers could assist, Defendants claim that Plaintiff came off the wall and struck Hamel in the head with his elbow.  (Dkt. No. 30-10 at 6, 9.)  To restrain him, Defendants allege that Hamel placed Plaintiff in a body hold and forced him to the floor.  *Id.*  On the way down to the floor, Defendants claim that Plaintiff hit his head on a wall-mounted fire extinguisher.  *Id.* at 6.  Once Plaintiff was down, Defendants state that Defendants Drum and Lamb arrived to assist Hamel wrestle Plaintiff to the floor and place him in handcuffs.  (Dkt. No. 30-10 at 6, 8,  9.)

*Plaintiff's Medical Exam and Injuries*

Immediately following the incident, Defendants Lamb, Hamel, and Drum escorted Plaintiff to the prison medical unit where he was examined by a nurse.  (Dkt. No. 1 at 8; 30-10 at 1-4.)  An officer with a video camera recorded Plaintiff's escort to the Great Meadow infirmary.  (Dkt. No. 33.)  Plaintiff claims that he told the nurse that the correction officers had "knocked out half of my tooth" during the assault, but rather than examining him, the nurse left the room.  *Id.*  While in the medical unit, DOCCS personnel then took a photograph of Plaintiff to document his injuries.  (Dkt. No. 30-11 at 1-17.)  The photographs show bruising and redness on the right side of his face and a small cut on his nose.  *Id.* at 1.  Following the medical examination, Plaintiff was escorted to a cell in the Special Housing Unit.   (Dkt. No. 1 at 8.)

In the days following the assault, Plaintiff alleges that he experienced pain and swelling in his limbs and muscles, as well as sharp pain in his ribs, and that he was unable to eat as a result.  (Dkt. No. 1 at 8.)  Plaintiff alleges that he also experienced pain in his head following the assault and observed blood coming out of his ear.  *Id.*  Plaintiff states that on May 24, 2010, he informed the on-call nurse of his symptoms and the nurse told him that he would be called to see

the doctor.  *Id.*  Plaintiff told the nurse that he was unable to walk due to his injuries and would need a wheelchair to get to the doctor.  *Id.*  DOCCS denied this request.  *Id.*

*Plaintiff's Disciplinary Charges and Tier III Hearing*

As a result of the May 21, 2010, incident, Defendant Hamel issued Plaintiff a misbehavior report charging Plaintiff with assault on staff and a number of other disciplinary violations.  (Dkt. No. 31-9 at 11.)  A Tier III hearing on the disciplinary charges was scheduled for May 25, 2010.  (Dkt. No. 31-10 at 1-3; 30-8 at 2-3.)   Defendant James Pegano, the Food Services Administrator at Great Meadow, was the hearing officer assigned to preside over the disciplinary proceedings.  (Dkt. No. 31-10 at 1.)

On the morning of the hearing, the correction officer assigned to escort Plaintiff to the hearing went to Plaintiff's cell to retrieve him.  (Dkt. No. 1 at 9; 30-8 at 2.)  When the officer arrived, however, Plaintiff informed him that he was unable to walk due to his leg injuries and thus could not accompany him to the proceeding.  *Id.*  Plaintiff told the officer that he required the assistance of a wheelchair, without which he could not attend the hearing.  *Id.*

The transcript of the hearing, held May 25, 2010, at 9:51 a.m., indicates that the officer then went to the location of the hearing and informed Defendant Pegano of Plaintiff's claim that he was unable to walk to the proceeding and that he had requested a wheelchair be provided for his transport.  (Dkt. No. 30-8 at 2.)  While on the record, Pegano called the facility medical unit to ascertain whether Plaintiff had any injury or condition in his medical file that would cause a mobility impairment rendering him unable to walk to the hearing as he had claimed.  *Id.*  Speaking onto the record via telephone, a nurse identified as "Sarah Nichols, RN," stated that she was unable to find anything in Plaintiff's medical records "regarding any difficulty with leg

movement or any permanent leg pain or anything of that nature." *Id.* Based on this information, Defendant Pegano concluded that Plaintiff did not have a medical condition that prevented him from attending the disciplinary hearing without transportation assistance. *Id.*

Finding that no justification existed for Plaintiff's absence, Pegano proceeded with the adjudication and entered a plea of not guilty on Plaintiff's behalf. (Dkt. No. 30-8 at 3.) At the conclusion of the evidence, Pegano found Plaintiff guilty on all charges and entered convictions for the following disciplinary violations: violent conduct, assault on staff, weapons possession, refusing a direct order, and refusing a search and frisk. (Dkt. No. 30-8 at 3; 31-10 at 1-3.) As punishment for these violations, Pegano sentenced Plaintiff to twelve months confinement in the Special Housing Unit, loss of package, commissary, and phone privileges, and a loss of twelve months of good time credit. (Dkt. No. 30-8 at 3; 31-10 at 1.) Plaintiff's sentence was affirmed on appeal.

*Procedural History*

Plaintiff commenced the present civil rights action by filing a complaint on September 16, 2010, alleging multiple constitutional violations arising from the May 21, 2010, incident and the resulting disciplinary convictions. (Dkt. No. 1.) On July 20, 2011, following initial review of Plaintiff's complaint, the Court issued a decision and order dismissing seven of Plaintiff's ten claims. (Dkt. No. 7 at 28.) Subject to consideration in the present case are Plaintiff's three surviving claims: (1) an excessive force claim against Defendants Hamel, Drum, and Lamb; (2) a failure to intervene claim against Defendant Livermore; and (3) a retaliation claim against Defendant Pegano.

Presently before the Court is Defendants' motion for summary judgment. (Dkt. No. 30.)

Plaintiff has opposed this motion.  (Dkt. No. 34, 35, 38.)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Id*. at 273.  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 & n.11 (1986).  Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

### B.    Legal Standard Governing Motion to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of

---

[1]    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968); *accord, Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

### A. Failure to Exhaust

Defendants assert that summary judgment should be granted as to all of Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996). Dismissal is appropriate, according to Defendants, because Plaintiff's failure to include his claims in a proper grievance and to pursue that grievance to completion through the established Inmate Grievance Program procedure bars him from pursuing these claims in the present federal action. (Dkt. No. 30-1 at 6.)

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve

general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted). Concerning the nature of this limitation, the Supreme Court has held that the failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit. *Jones v. Bock*, 549 U.S. 199, 204 (2007) (citations omitted). In the event that such a defendant establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, the inmate's complaint is subject to dismissal. *See Pettus v. McCoy*, No. 04–CV–0471, 2006 WL 2639369, at *1, 2006 U.S. Dist. LEXIS 65221, at *3 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.)[2]; *see also Woodford*, 548 U.S. at 94–95 (holding that the PLRA requires "proper exhaustion" of available remedies).

The Supreme Court has explained that "[p]roper exhaustion" under the PLRA requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *see also Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (citing *Woodford*, 548 U.S. at 95). Procedural compliance is mandatory despite the fact that placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense"; an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson*, 380 F.3d at 697–98).

---

[2]     The Court will provide Plaintiff with a copy of all unpublished decisions cited in this Report-Recommendation and Order in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has a well-established three-step grievance program for inmate complaints. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013). Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a) (2010). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* at 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*Id.* at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing. *Id.* at § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* at 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* at § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. *Id.* at 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* at 701.5(d)(1)(i). CORC is required to render a written decision within thirty calendar days of receipt of the appeal. *Id.* at 701.5(d)(3)(ii).

Inmates may seek an extension of the time limits for any of the steps in writing at any of

the steps, but such a request must be made within forty-five days of the incident being grieved or the decision being appealed. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) (2013). Moreover, if an inmate believes that an extension was wrongly denied, he may file a separate grievance protesting the denial. *Id*.

Generally, if a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies and his claims are subject to dismissal. *Woodford*, 548 U.S. at 93. However, a plaintiff's failure to exhaust does not end the inquiry. In *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), the Second Circuit articulated a three-part inquiry for courts to apply when a defendant contends that a prisoner has failed to exhaust available administrative remedies. *Id*. at 86.[3] First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id*. (citations omitted). Third, if the remedies were available to the plaintiff and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id*. (citations and

---

[3]     The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011).

internal quotations omitted).

1.     <u>Plaintiff's evidence of exhaustion</u>

Applying the exhaustion analysis here, I find as an initial matter that Plaintiff failed to exhaust the available administrative remedies as required by the PLRA because he failed to pursue the grievance process to completion for any of his claims in the present action. As proof of Plaintiff's failure to exhaust, Defendants submit the declaration of Jeffrey Hale, the Assistant Director of the Inmate Grievance Program, whose duties include "management of inmate grievance appeal records generated and kept by DOCCS Central Office Review Committee (CORC)." (Dkt. No. 30-3 at 1, ¶ 1.) In his declaration, Hale states that CORC records indicate that as of March 27, 2012, Plaintiff has pursued a total of eighty-three grievance appeals to CORC. *Id.* at ¶ 4. Of these eighty-three appeals, Hale states that twenty-three originated at the Great Meadow Correctional Facility. *Id.* Concerning CORC's record of appeals relevant to the May 21, 2010, incident subject to the present action, Hale states that Plaintiff filed only one grievance appeal from Great Meadow during 2010 and that said appeal was filed in February 2010 and concerned an unrelated grievance. *Id.* Hale states that Plaintiff never presented an appeal to CORC concerning a 2010 use of force or failure to protect by Great Meadow security staff or an appeal involving 2010 retaliatory actions by Defendant Pagano. *Id.* at 2, ¶ 5-6. As an exhibit to Hale's declaration, Defendants submit a print out of the record of grievance appeals that Plaintiff has submitted to CORC. (Dkt. No. 30-3, 3-7; 30-4, 1-3.) The print out does not include any record of a grievance appeal filed by Plaintiff concerning his claims in the present action. *Id.*

As proof that he did in fact properly exhaust his claims in this action, Plaintiff cites the

court to two grievances he filed regarding the claims in this action, as well as letters and other informal complaints seeking resolution of these issues. As discussed below, however, Plaintiff's alleged proof of exhaustion established only that he initiated grievances and other administrative complaints about the claims in this action, not that he pursued them to completion as is required by the PLRA to properly exhaust administrative remedies. *Woodford*, 548 U.S. at 93.

As evidence of his attempts to pursue administrative remedies before filing the present civil action, Plaintiff asserts that he did indeed file IGRC grievances concerning his claims on two separate occasions and that under the circumstances these grievances were sufficient to exhaust his available administrative remedies. First, Plaintiff claims that he filed a grievance about the May 21, 2010, incident with the Great Meadow IGRC within twenty-one days after the incident occurred as required by DOCCS IGP. (Dkt. No. 1 at 4.) He contends that his attempt to pursue this "original grievance" was thwarted, however, when Great Meadow administration threw away his grievance to prevent proper filing. *Id.*[4] (Dkt. No. 34 at 4, ¶ 2.) The second grievance referenced by Plaintiff was one filed with the Clinton Correctional Facility ("Clinton") IGRC on August 6, 2010, following Plaintiff's transfer from Great Meadow to Clinton. (Dkt. No. 34 at 21-24.) In this second grievance, Plaintiff requested that the Clinton IGRC ascertain why the Great Meadow IGRC had failed to issue a decision on Plaintiff's "original" grievance. *Id.*

---

[4]     In his complaint, sworn under penalty of perjury, Plaintiff states that he filed a grievance concerning the May 21, 2010, incident with the Inmate Grievance Program, but that the final result of this grievance was "covert action to cover up the illegal action." (Dkt. No. 1 at 4.) In his response to Defendants' summary judgment motion, Plaintiff elaborates, explaining that he "tryied [sic] to file a grievance at Great Meadow but it was thrown away." (Dkt. No. 34 at 4, ¶ 2.)

Turning first to the question of whether Plaintiff's "original grievance" amounted to "proper exhaustion" under the PLRA, Plaintiff argues that the Great Meadow administration's act of sabotage foreclosed him from pursuing further administrative remedies, rendering them unavailable. However, even if the Court were to accept as true Plaintiff's claim that his grievance "was thrown away" by Great Meadow administration in an attempt to thwart him, Great Meadow's culpable conduct does not excuse Plaintiff's failure to appeal this grievance to the next level. To complete the grievance process and satisfy the PLRA's exhaustion requirement, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can – and must – be appealed to the next level, including CORC. 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *see also Goodson v. Silver*, No. 9:09-cv-0494, 2012 WL 4449937, at *4, 2012 U.S. Dist. LEXIS 137177, at *36-37 (N.D.N.Y. Sept. 25, 2012); *Murray v. Palmer*, No. 03–CV–1010, 2010 WL 1235591, at *2 & n. 4, 2010 U.S. Dist. LEXIS 32014, at *6 (N.D.N.Y. Mar. 31, 2010) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can – and must – be appealed to the next level, including CORC, to complete the grievance process."). Although Plaintiff asserts that he filed a grievance with Great Meadow about the claims set forth in this action, he failed to file an appeal of this grievance with CORC when the IGRC failed to respond. Without filing such an appeal to his original grievance, Plaintiff has not satisfied the exhaustion requirements of the PLRA. *Woodford*, 548 U.S. at 93.

Plaintiff is unable to establish exhaustion of remedies by reference to his second grievance for the same reason. As with his "original grievance" about the May 21, 2010, incident, Plaintiff failed to appeal the decision rendered by the Clinton IGRC to the next level in

the IGP process. Indeed, the evidence demonstrates that Plaintiff never filed any appeals

whatsoever concerning the claims in this action. Because Plaintiff failed to pursue any of his

complaints–formal or informal–to completion, I find that Plaintiff failed to "properly exhaust"

his claims in this action as required by the PLRA. *Woodford*, 548 U.S. at 93.

2.     Application of *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004)

Having found that Plaintiff has not exhausted his administrative remedies, the Court must

turns its attention to the three-part exhaustion inquiry articulated by the Second Circuit in

*Hemphill* to determine whether dismissal on failure to exhaust grounds is appropriate here.

*Hemphill*, 380 F.3d at 686.

a.     *Availability of Remedies*

Applying the three-step analysis set forth in *Hemphill* to the present case, I first conclude

that there was an internal administrative remedy available to Plaintiff. As explained above, New

York prison inmates are subject to the inmate grievance procedure established by DOCCS and

recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson*, No. 96-

cv-5396 (GBD), 2004 WL 324898 at *4, 2004 U.S. Dist. LEXIS 2492, at *17-18 (S.D.N.Y.

February 20, 2004) (*citing Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v.

Melindez*, 199 F.3d 108, 112-13 (2d Cir. 1999)).[5] Here, the IGP provided an available

administrative remedy to Plaintiff. This remedy remained available to Plaintiff despite the Great

Meadow administration's alleged efforts to prevent filing of his initial grievance because, as

discussed above, Plaintiff still had the opportunity to file an appeal as necessary to complete the

_____

[5]     The Court will provide Plaintiff with a copy of these unpublished decisions in
accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009)
(per curiam).

grievance process when the Great Meadow IGRC failed to respond.  *See* 7 N.Y.C.R.R. § 701.6(g)

(stating that "matters not decided within the time limits may be appealed to the next step.")

              b.     *Estoppel*

After determining the existence of "available remedies," the second step under *Hemphill*

is to "inquire as to whether [some or all of] the defendants may have forfeited the affirmative

defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own

actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the

defendants from raising the plaintiff's failure to exhaust as a defense."  *Hemphill*, 380 F.3d at

686.  (citations omitted).  Here, Plaintiff does not assert that the individual Defendants

themselves inhibited through threats or other conduct his ability to exhaust the administrative

remedies available through the DOCCS IGP.  As such, estoppel is inapplicable in the present

case.

     Although not attributed to any of the individual Defendants, Plaintiff does contend, as

discussed *supra*, that Great Meadow administration prevented him from filing his grievance by

throwing it away. Great Meadow's actions in this respect cannot be used as a basis for estoppel

because, as discussed above, Plaintiff still has the opportunity – and indeed responsibility – to

file an appeal when he failed to receive a response to this grievance.  As such, Defendants are not

estopped from asserting exhaustion as a defense in this case.

              c.     *Special Circumstances*

As for the third step of the *Hemphill* analysis, the Second Circuit instructs the court to

"consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's

failure to comply with the administrative procedural requirements."  *Id.*   Liberally construed,

Plaintiff argues in his response to Defendants' summary judgment motion that such "special circumstances" are present in this case and consist of a combination of some or all of the following five circumstances: (1) that he attempted to file a timely grievance about the May 21, 2010, incident through the Great Meadow IGP, but the Great Meadow administration refused to file said grievance; (2) that he initiated an investigation by the DOCCS Inspector General as an alternative means of redress after Great Meadow failed to respond to his initial grievance; (3) that after being transferred to Clinton Correctional Facility on July 1, 2010, he filed a second grievance on August 6, 2010, requesting that the IGRC ascertain why he had not received a response to his initial grievance concerning the May 21, 2010, incident; (4) that he attempted to appeal the IGRC's response to this second grievance; (5) that his exhaustion of all available appeals from Plaintiff's disciplinary conviction should be deemed sufficient exhaustion of remedies for purposes of his section 1983 claims; and (6) that the fact he sent letters directly to DOCCS officials regarding the claims in this action should suffice to exhaust his administrative remedies in this action.

As discussed below, none of these circumstances justify Plaintiff's failure to comply with DOCCS' administrative procedure for the filing of grievances.

<em>i.     First Circumstance Asserted by Plaintiff</em>

The first "special circumstance" asserted by Plaintiff as an excuse for failing to exhaust his administrative remedies in this case is his claim that he "tryied [sic] to file a grievance at Great Meadow but it was thrown away." (Dkt. No. 34 at 4, ¶ 2.) Plaintiff's argument on this point is without merit. As discussed above, even if the Court accepts as true Plaintiff's contention that Great Meadow threw away rather than filed his grievance, this alleged action by

Great Meadow does not excuse Plaintiff's failure to file an appeal when he realized that Great Meadow failed to respond. At that point, Plaintiff had the opportunity to complete the grievance process as required to exhaust his administrative remedies, but simply failed to do so. *See* 7 N.Y.C.R.R. § 701.6(g) (stating that "matters not decided within the time limits may be appealed to the next step."). Because Plaintiff failed to exhaust the administrative remedy available to him by appealing Great Meadow IGRC's non-response to this initial grievance to CORC, Plaintiff's allegation that Great Meadow threw away his initial grievance is not a "special circumstance" justifying an excuse from the PLRA's exhaustion requirement.

### ii. *Second Circumstance Asserted by Plaintiff*

The second "special circumstance" asserted by Plaintiff as grounds excusing him from the exhaustion requirement in this case is the fact that the Inspector General ("IG") conducted an investigation of the excessive force allegations in this case. (Dkt. No. 1 at 6, ¶ 6; 1 at 4, ¶ 4(b)(I); 30-5 at 2, ¶ 7; 31-7 at 1-11; 31-8 at 1-11; 31-9 at 1-11; 31-10 at 1-11.) Plaintiff argues that this investigation was a suitable substitute for pursuing his complaint through the inmate grievance process and should thus be deemed sufficient proof of exhaustion. Plaintiff is incorrect.

In their motion, Defendants confirm that the IG did indeed conduct an investigation into Plaintiff's allegations of excessive force by Defendants Lamb, Drum, and Hamel. (Dkt. No. 30-1 at 7; 31-8 at 1-11; 31-9 at 1-11; 31-10 at 1-11.) According to the IG's confidential report of the investigation, which Defendants filed as part of the summary judgment record, this investigation was initiated by an oral complaint from Plaintiff's fiancé. (Dkt. No. 30-5 at 2, ¶ 7; 31-7 at 1-11; 31-8 at 1-11; 31-9 at 1-11; 31-10 at 1-11.) More specifically, the report states that the

19

investigation was referred by "Anita Gavin-[Plaintiff's] Fiancé." (Dkt. No. 31-7 at 4.) The report also states that the IG received a letter on May 25, 2010, from a fellow inmate of Plaintiff containing the same allegations as those articulated by Ms. Gavin. *Id.* A copy of this letter is included in the IG's confidential report. (Dkt. No. 31-7 at 7-9.) In it, the author alleges that Plaintiff was the victim of excessive force and failure to provide medical care by Great Meadow staff during and after the May 21, 2010, incident; no reference is made in this letter to retaliation by Defendant Pegano, however. (Dkt. No. 31-7 at 7.)

According to the investigation report submitted by Defendants, the IG concluded based on its investigation that the allegations of excessive force arising from the May 21, 2010, incident were unsubstantiated and, as such, recommended that the case be closed. (Dkt. No. 31-7 at 2.) Nothing on the record suggests that Plaintiff appealed the IG's adverse finding to CORC, nor does Plaintiff himself assert that such an appeal was ever filed.[6]

As Judge Suddaby recently explained in *Goodson v. Silver*, No. 9:09-cv-0494 (GTS/DRH), 2012 WL 4449937, 2012 U.S. Dist. LEXIS 137177 (N.D.N.Y. Sept. 25, 2012), "[d]istrict courts appear to uniformly agree that, without a referral from a superintendent, an IG's investigation of a matter and conclusion that it is unsubstantiated does not satisfy the exhaustion requirement; rather, the inmate must still appeal the IG's conclusion of unsubstantiation to CORC." *Id.* at *9 (citing *Stephenson v. Dunford*, 320 F. Supp. 2d 44, 46, 52 (W.D.N.Y. 2004)

---

[6]     IGRC records submitted by Defendants indicate that as of March 27, 2012, Plaintiff has pursued a total of 83 grievance appeals to CORC. (Dkt. No. 30-3 at 1, ¶ 1.) Of these 83 appeals, Hale states that 23 originated at the Great Meadow Correctional Facility. *Id.* at 4. There is no indication in the record maintained by CORC that Plaintiff ever filed an appeal from the IG's investigation findings concerning Plaintiff's claims in the present suit. (Dkt. No. 30-3, 3-7; 30-4, 1-3.)

(finding no exhaustion where inmate failed to pursue grievance all the way to CORC following

investigation and finding of unsubstantiation by IG), *vacated on other grounds*, 139 F. App'x 311

(2d Cir. 2005)); *Johnson v. Fernandez*, No. 09–CV–0626 (FJS/ATB), 2011 WL 7629513, at *5,

2011 U.S. Dist. LEXIS 154404, at *15-16 (N.D.N.Y.  Mar. 1, 2011) (finding no exhaustion

where inmate failed to pursue grievance all the way to CORC following investigation and finding

of unsubstantiation by IG), *adopted by* 2012 WL 1033652, 2012 U.S. Dist. LEXIS 41926

(N.D.N.Y. Mar 27, 2012).[7]

Applying this rule of law here, the IG investigation asserted by Plaintiff as a "special

circumstance" justifying his failure to exhaust administrative remedies fails.  As in the cases cited

above, the IG's investigation in this case was not initiated by a referral from the superintendent as

_____

[7]        *See also Jacoby v. Phelix*, No. 07–CV–0872 (DNH/ATB), 2010 WL 1839299, at
*8–9 & n. 15, 2010 U.S. Dist. LEXIS 44222, at *10-11 & n.15 (N.D.N.Y. March 31, 2010)
(finding no exhaustion where inmate failed to pursue grievance all the way to CORC following
investigation and finding of unsubstantiation by IG), adopted by 2010 WL 1839264, 2010 U.S.
Dist. LEXIS 44201 (N.D.N.Y. May 06, 2010); *Thomas v. Cassleberry*, 315 F. Supp. 2d 301,
303–04 (W.D.N.Y.2004) (finding no exhaustion where inmate failed to pursue grievance all the
way to CORC following "investig[ation] by [the] Inspector Gen[eral]"); *McNair v. Jones*, No.
01–CV–3253 (RCC) (GWG), 2002 WL 31082948 at *4, 2002 U.S. Dist. LEXIS 17409, at *22-
23 (S.D.N.Y. Sept. 18, 2002) (finding no exhaustion where inmate failed to pursue grievance all
the way to CORC following investigation and finding of unsubstantiation by IG); *Houze v.
Segarra*, 217 F. Supp. 2d 394, 395–96 (S.D.N.Y.2002) (finding no exhaustion where inmate
failed to pursue grievance all the way to CORC following IG's investigation and finding that
there was "no merit to [the inmate's] allegations"); *Grey v. Sparhawk*, No. 99–CV–9871 HB,
2000 WL 815916, at *2, 2000 U.S. Dist. LEXIS 8656, at *5 (S.D.N.Y. June 23, 2000) (rejecting
inmate's argument that "the Inspector General's investigation, if any, into the matter exhausts the
administrative procedures"); *cf. Tapp v. Kitchen*, No. 02–CV–6658 CJS, 2004 WL 2403827, at
*8, 2004 U.S. Dist. LEXIS 29972, at *25-26 (W.D.N.Y. Oct. 26, 2004) ("Plaintiff's argument in
this regard is further undercut by the fact that he never followed up on his complaint to the
Inspector General after he failed to receive any kind of a decision."); *Velez v. Kulhmann*, No.
02–CV–6062 AKH, 2003 WL 22004899, at *3, 2003 U.S. Dist. LEXIS 14684, at *10-11
(S.D.N.Y. Aug. 22, 2003) (finding no exhaustion where inmate failed to pursue grievance all the
way to CORC following his complaint to an IG investigator).

required to fall within the purview of the inmate grievance process; it was a referral from Plaintiff's fiancé that initiated the investigation. (Dkt. No. 31-7 at 4.) As a result, pursuant to the rule articulated by the Court in *Goodson,* the IG's investigation into the conduct of the correction officers involved does not excuse Plaintiff from the PLRA's exhaustion of remedies requirement. *Goodson*, 2012 WL 4449937, at *9, 2012 U.S. Dist. LEXIS 137177, at *36-37. To satisfy the exhaustion requirement, Plaintiff was required to appeal the IG's adverse finding, which he failed to do. *Id.* As such, the second circumstance asserted by Plaintiff as grounds for excusing the PLRA's exhaustion requirement fails.

### iii. Third Circumstance Asserted by Plaintiff

As his next basis for relief from the PLRA's exhaustion requirement, Plaintiff points to the fact that on August 6, 2010, after Great Meadow failed to respond to his grievance concerning the May 21, 2010, incident, he filed a second grievance with the IGRC at Clinton. (Dkt. No. 34 at 4.) Plaintiff had been transferred from Great Meadow to Clinton on July 1, 2010, several weeks after he allegedly filed his initial grievance concerning the May 21, 2010, incident with the Great Meadow IGRC. In this second grievance, dated August 6, 2010, Plaintiff requested that the committee members ascertain why the Great Meadow IGRC had failed to respond to his original grievance. (Dkt. No. 34 at 21-22.)

In response to Plaintiff's August 6, 2010, grievance, the Clinton IGRC issued the following decision in the designated space on the grievance form: "Grievant is advised there is no record of any grievance of this issue at GMCF. Grievant may write to S. Woodward, IGPS, at GMCF for additional information concerning his GMCF grievances." (Dkt. No. 30-1 at 7; Dkt. No. 34 at 22.)

Turning first to Plaintiff's contention that his filing of the August 6, 2010, grievance constitutes a "special circumstance" pursuant to *Hemphill*, neither the law nor the facts support Plaintiff's position in this respect. As discussed above, where, as alleged here, the IGRC fails to respond with a timely determination of an inmate's grievance, that inmate must nonetheless proceed with the grievance process by filing an appeal in the same manner as if IGRC had responded with an adverse determination of his grievance. 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *see also Goodson v. Silver*, No. 9:09-cv-0494 (GTS/DRH), 2012 WL 4449937, at *4, 2012 U.S. Dist. LEXIS 137177, at *12 (N.D.N.Y. Sept. 25, 2012); *Murray v. Palmer*, No. 03–CV–1010 (GTS/GHL), 2010 WL 1235591, at *2 n. 4, 2010 U.S. Dist. LEXIS 32014, at *6 n.4 (N.D.N.Y. Mar. 31, 2010). Given its clear language, the relevant New York Code, 7 N.Y.C.R.R. § 701.6(g), created an "available remedy" for Plaintiff in this case, which is unequivocal. Once he realized that Great Meadow had failed to decide his grievance within the required time line, his "available remedy" under 7 N.Y.C.R.R. § 701.6(g) was to proceed with the administrative process by "appeal[ing] to the next step." *Id*. Plaintiff elected to not to pursue his available remedy, however, and thus failed to exhaust his administrative remedies as required under the PLRA. Given this factual framework and the remedy available to the Plaintiff had he simply chosen to follow proper procedure, Plaintiff's attempt to characterize his August 6, 2010, grievance as a "special circumstance" under the third prong of the *Hemphill* test is unsupported by the evidence. Plaintiff chose not to complete the grievance process by exercising his right to appeal his claims concerning the May 21, 2010, incident to the next step; the mere fact that he decided nearly two months later to file a grievance complaining about Great Meadow's handling of his initial grievance does not excuse Plaintiff's

failure to exhaust his administrative remedies as required by the PLRA. As such, the third special circumstance offered by Plaintiff as justification for his failure to exhaust available administrative remedies fails.

*iv.     Fourth Circumstance Asserted by Plaintiff*

The fourth "special circumstance" Plaintiff cites as an excuse for failing to exhaust his administrative remedies is an extension of the third circumstance discussed above. Plaintiff asserts that in addition to filing the August 6, 2010, grievance, he also took all the necessary steps to appeal the Clinton IGRC's decision on this second grievance. (Dkt. No. 34 at 4-5.) He argues that even though his attempts to appeal this second grievance were ultimately thwarted, his efforts toward exhaustion of this second claim amount to a "special circumstance" precluding dismissal of his claims for failure to exhaust. *Id.*

Plaintiff's argument in favor of this fourth circumstance as an excuse for his failure to exhaust available administrative remedies fails for a number of reasons. First, his attempted appeal of the August 6, 2010, grievance – the grounds identified by Plaintiff as his fourth "special circumstance" – is dependent upon a finding in his favor on the third circumstance – i.e., that Plaintiff's filing of the August 6, 2010, grievance itself is a "special circumstance" excusing the exhaustion requirement imposed by the PLRA. This is not the case, however, for the reasons discussed above. Since Plaintiff failed to exercise the administrative remedies made available to him by 7 N.Y.C.R.R. § 701.6(g), he was unable to excuse his inaction by filing a separate grievance approximately two months later. Because the filing of the August 6, 2010, grievance is insufficient to establish a "special circumstance" excusing Plaintiff from the PLRA's exhaustion requirement, the fact that Plaintiff attempted to appeal the decision on this grievance is irrelevant.

As with the third circumstance discussed above, Plaintiff's argument in favor of this fourth circumstance as precluding dismissal based on exhaustion thus must fail.

Before exploring alternative bases for evaluating Plaintiff's claim, it is worth noting that the parties offer conflicting versions of facts surrounding Plantiff's alleged attempt to appeal the decision of the Clinton IGRC on Plaintiff's August 6, 2010, grievance. Below the IGRC members' signature line, toward the bottom of the form, there is space provided for Plaintiff to check a box indicating whether or not he agrees with the ICRG's decision and whether he elects to appeal said decision to the superintendent. (Dkt. No. 34 at 22.) The form states that the grievant has seven days from receiving the IGRC's decision to return the signed form to prison administration. *Id.*

Although both parties acknowledge that Plaintiff filed the August 6, 2010, grievance with the Clinton IGRC, the question of whether Plaintiff ever properly elected to appeal Clinton's decision by signing and returning the appropriate portion of the form is the subject of dispute between the parties. Plaintiff claims that after receiving the Clinton IGRC's response, he checked the box on the form indicating that he disagreed with the decision and wished to appeal the IGRC decision to the superintendent and then returned the signed form within seven days as required. (Dkt. No. 38-1 at 10 ¶ 3.) In support of his position, Plaintiff submits a copy of the August 6, 2010, grievance form with Plaintiff's signature and election to appeal visible on the form. (Dkt. No. 34 at 22.) Plaintiff's signature does not appear on a different copy of the form, however, making it appear as if Plaintiff never completed the appellate election portion of the form as he claims. (Dkt. No. 34 at 24.) Defendants argue that this is the authentic version of the form. (Dkt. No. 31 at 7.)

In opposition to the version of facts suggested by Defendants' copy of the form, Plaintiff asserts that said copy is a "false grievance form" sent by Defendants to deceive the Court into believing that Plaintiff "never sign[ed] it for further action." (Dkt. No. 34 at 4.) In addition to the absence of Plaintiff's signature on the copy that Defendants claim is authentic, the other key difference between the forms is in the signatures of the IGRC members. The copy of the grievance form on which Defendants rely contains the signatures of the IGRC members in the designated signature lines and a date stamp indicating that the date returned to the inmate was August 11, 2010. (Dkt. No. 34 at 24.) Neither the IGRC members' signatures nor the date returned to inmate appear on the Plaintiff's version, however, as the spaces for these items are left blank. (Dkt. No. 34 at 22.)

Although the discrepancies highlighted above demonstrate disputed issues of fact regarding Plaintiff's reaction to the August 11, 2010, IGRC decision, this dispute is irrelevant to the Court's evaluation of the Plaintiff's "special circumstance" argument at issue here. Even if the Court accepts Plaintiff's version of the facts in its entirety, Plaintiff does not contend that he followed the grievance process to completion as to this August 6, 2010, grievance by appealing to CORC, a remedy available to him under 7 N.Y.C.R.R. § 701.6(g) when the superintendent failed to issue a timely decision on his first line appeal. Because he failed to exhaust his available administrative remedies even for his second, "substitute" grievance filed after his initial grievance about the May 21, 2010, incident was allegedly thrown away by Great Meadow staff, Plaintiff is unable to establish that his abandoned attempts to pursue this appeal should excuse his failure to exhaust administrative remedies in pursuing the original grievance in this case. Plaintiff's argument that this alleged attempt to appeal the August 11, 2010, decision of the Clinton IGRC

constitutes a "special circumstance" justifying his failure to exhaust under *Hemphill* thus fails.

v.      *Fifth Circumstance Asserted by Plaintiff*

The fifth circumstance cited by Plaintiff as grounds for excusing his failure to exhaust available administrative remedies is the fact that he did appeal the Tier III disciplinary conviction and sentenced imposed by Defendant Pegano to exhaustion.  Liberally construed, Plaintiff argues that this appeal of his underlying disciplinary conviction and sentence should be applied to his claims in the present case and that dismissal of these claims for failure to exhaust under the PLRA is therefore inappropriate.  Plaintiff is incorrect.

The Second Circuit has held that, under certain circumstances, an inmate may exhaust his administrative remedies by raising his claim during a related disciplinary proceeding.  *Giano v. Goord*, 380 F.3d 670, 678-79 (2d Cir. 2004); *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004).  Such circumstances exist only where "(1) the inmate reasonably believed that his 'only available remedy' was to raise his claim as part of a tier disciplinary hearing, and (2) the inmate articulated and pursued his claim in the disciplinary proceeding in a manner that afforded prison officials the time and opportunity to thoroughly investigate that claim."  *Murray v. Palmer*, No. 03–CV–1010 (GTS/GHL), 2010 WL 1235591, at *3, 2010 U.S. Dist. LEXIS 32014, at *14 (N.D.N.Y. Mar. 31, 2010).

In *Giano v. Goord*, the Second Circuit excused an inmate's failure to file a grievance regarding his complaint that a correction officer had initiated a retaliatory disciplinary charge against him where the inmate had appealed the disciplinary conviction resulting from the allegedly retaliatory charge and had raised his retaliation complaint as part of the appeal.  The basis for the court's decision in *Giano* was its conclusion that the plaintiff had reasonably

misinterpreted regulations to mean that his only administrative recourse was to appeal his disciplinary conviction. *Giano,* 380 F.3d at 676, 679 (holding that prisoner's failure to exhaust with respect to the retaliation claim was justified). Because the plaintiff's actions were the result of reasonable confusion about the proper administrative channel through which to pursue his claim, the court found that the plaintiff had demonstrated the presence of special circumstances justifying his failure to comply with the PLRA's exhaustion requirement. *Id.*

Here, unlike in *Giano*, the evidence does not support a finding that Plaintiff reasonably believed his "only available remedy" was to raise his claims as part of a tier disciplinary hearing. To the contrary, Plaintiff in fact claims to have initiated grievances related to his claims in this action on at least two occasions, allegations indicating that he understood that this was the proper administrative process to pursue with respect to these complaints. *Neree v. O'Hara*, No. 9:09-CV-802, 2011 WL 3841551, *7, 2011 U.S. Dist. LEXIS 96640, at *24 (N.D.N.Y. June 20, 2011); *see also Reynoso v. Swezey*, 238 F. App'x. 660, 663 (2d Cir. 2007) (holding that where plaintiff filed a grievance with respect to the retaliation claim, but failed to appeal the denial to CORC, his failure to exhaust was not excused in light of evidence of his awareness that the grievance process was the appropriate administrative remedy). Because the record indicates that Plaintiff knew that the inmate grievance process was the proper administrative channel for the claims in this action, the fact that Plaintiff raised these claims in his disciplinary appeal does not excuse his failure to exhaust administrative remedies in the present case. As such, the fifth circumstance asserted by Plaintiff is without merit.

As the final "special circumstance" he asserts, Plaintiff cites the court to multiple letters he allegedly has written to various DOCCS officials about the claims in this action.  Specifically, Plaintiff states:

> So it was grievance department officials who impede[sic] obstruct the procedure of grievance, so I myself wrote the commission Brian Fischer and Keren Bellamy Director in Albany of the Grievance Department, but those letter[sic] and response[sic] from these officials are in exhibits in *Dabney v. Sawyer,* 11-cv-0273 (LEK/RFT) which in [sic.] Exhibit (A) and (E) if the court wish to verify this they can ask the clerk or judge to check these letter to both was on the felonious assault May 21, 2010.

(Dkt. No. 34 at 5, ¶ 4.)  Although he refers the Court to exhibits "(A) and (E)" in *Dabney v. Sawyer*, 11-cv-0273, a separate civil action with fifty-eight docket entries, Plaintiff fails to identify the specific docket number or type of filing to which these exhibits are attached.

Local Rule 7.1, which provides the procedure for filing a summary judgment motion in this district, requires that the movant set forth the undisputed facts that, it contends, entitles it to summary judgment in a Statement of Material Facts.  *See* N.D.N.Y.L.R. 7.1(a)(3).  Once a Rule 7.1(a)(3) Statement of Material Facts is submitted, the non-moving party must file a response to the movant's Statement of Material Facts that "mirror[s] the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs."  *Id.*  "Each denial shall set forth a specific citation to the record where the factual issue arises."  *Id.*  Conclusory denials unsupported by specific citations to the record are insufficient.  S*ee N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648–49 (2d Cir. 2005).

29

Here, as a preliminary matter, I note that Plaintiff's reference to an unidentified exhibit filed in a separate action does not comply with Local Rule 7.1(a)(3)'s requirement that denials be supported by specific citations to the record. Despite his failure to comply with local rules in this respect, however, I have reviewed the docket entries in *Dabney v. Sawyer*, 9:11-cv-0273, and have found two letters that appear to correspond to those referenced by Plaintiff as the above mentioned sixth circumstance excusing his failure to exhaust. The first is a letter from Karen Bellamy to Plaintiff dated December 15, 2010. (*Dabney v. Sawyer*, 9:11-cv-0273, Dkt. No. 52-1 at 39.) In this letter, Ms. Bellamy acknowledges receipt of correspondence from Plaintiff dated November 19, 2010, and advises Plaintiff that "[c]ontact with the facility administration reveals that CL-60134-10 was heard by the IGRC on August 11, 2010 and you did not appeal." *Id.* The letter instructs Plaintiff to direct future inquiries to the IGP supervisor. *Id.*

The second letter is from Deputy Commissioner Lucien Leclaire and appears to be a response to a letter from Plaintiff to Commissioner Fischer. (*Dabney v. Sawyer*, 9:11-cv-0273, Dkt. No. 52-1 at 2.) In the letter, dated December 27, 2010, Leclaire states that the Commissioner asked him to respond to Plaintiff's letter regarding "medical care, alleged assault and misconduct by staff at the Clinton and Great Meadow Correctional Facilities." *Id.* Concerning the allegations of assault and misconduct, Leclaire summarizes the information on the record about the May 21, 2010, incident and the disciplinary findings against Plaintiff resulting from the May 25, 2010, hearing. *Id.* The letter then reiterates that "[u]pon review of the information presented in this investigation, the superintendent found no evidence to substantiate your allegations." *Id.* Finally, the letter instructs Plaintiff to direct future inquiries

to facility officials.  *Id.*[8]

Under the Supreme Court's holding in *Woodford v. Ngo*, 548 U.S. 81 (2006), proper exhaustion requires that a plaintiff procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules."  *Id.* at 95; *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).  In *Woodford*, the Supreme Court explained that the PLRA requires "proper exhaustion," which "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'"  *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  Because it is "proper exhaustion" that is required by the PLRA, an inmate's attempt to exhaust by simply writing a letter directly to prison administration generally will not suffice to exhaust administrative remedies under the PLRA.  *See Hooks v. Howard*, No. 907-CV-0724 (TJM/RFT), 2010 WL 1235236, at *3, 2010 U.S. Dist. LEXIS 30589, at *6-7 (N.D.N.Y. Mar. 30, 2010); *Grey v. Sparhawk*, No. 99–CV–9871 HB, 2000 WL 815916, at *2, 2000 U.S. Dist. LEXIS 8656, at *5 (S.D.N.Y. June 23, 2000) (holding that a complaint filed directly with the IG did not excuse plaintiff from "adhering to the available administrative procedures").[9]  In writing letters directly

---

[8]    Although the letters from both Bellamy and Leclaire state that they are written in response to letters from Plaintiff, these letters are incorporated by reference only and do not appear to have been filed as part of Plaintiff's exhibits in *Dabney v. Sawyer*, 9:11-cv-0273.

[9]    Although an inmate's unsuccessful attempt to resolve a complaint by writing a letter to prison administration will not suffice to exhaust an inmate's administrative remedies, note that "a grievance through informal channels will satisfy the exhaustion requirement *if the prisoner thereby obtained a favorable resolution of his grievance.*" *Thomas v. Cassleberry*, 315 F. Supp. 2d 301, 304 (W.D.N.Y. 2004) (citations omitted) (emphasis added). The exhaustion requirement is satisfied in such a case because the inmate would not have had any reason to appeal a favorable resolution and thus would be relieved of the duty to complete the grievance process.  *Andrews v. Cruz*, No. 04-CV-566 (PAC) (RLE), 2010 WL 1141182, at *6, 2010 U.S.

to prison administrators Bellamy and Fischer, Plaintiff elected to disregard the procedure established by the IGP and required by the PLRA to establish "proper exhaustion." *Woodford*, 548 U.S. at 90. As such, the fact that Plaintiff wrote these letters should not be deemed a "special circumstance" excusing his failure to properly exhaust administrative remedies in this case. *Id.* To hold that inmates like Plaintiff may circumvent the exhaustion requirement simply by including his complaints in a letter to prison administration would be to frustrate the purpose of the exhaustion rule. *Id.* As such, the sixth basis asserted by Plaintiff as grounds for excusing his non-exhaustion fails.

### 2. Failure to Exhaust: Conclusion

As set forth above, Plaintiff failed to exhaust his available administrative remedies before commencing the present suit. The evidence indicates that administrative remedies were available to him at the time his claims arose, but that he chose not to pursue said remedies. *Hemphill*, 380 F.3d at 686. Despite Plaintiff's assertions to the contrary, there is no evidence on the record to plausibly suggest that Defendants should be estopped from asserting exhaustion as an affirmative defense or that any "special circumstances" exist in this case justifying his failure to exhaust. I therefore recommend that the Court grant Defendants' motion for summary judgment based on Plaintiff's failure to exhaust available administrative remedies.

### B. *Heck v. Humphrey*

In the event that the Court disagrees with my recommendation that summary judgment be granted on exhaustion grounds, and to ensure complete analysis of the issues, I turn next to

---

Dist. LEXIS 28124, at *16 (S.D.N.Y. Mar. 24, 2010) (citations omitted).

Defendants' contention that the "favorable termination rule" bars Plaintiff's claims in the present case. (Dkt. No. 30-1 at 9-11.) As an alternative basis for summary judgment, Defendants argue that the favorable termination rule articulated in *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny mandates dismissal based on the prior adjudication of Plaintiff's disciplinary violations in this case. (Dkt. No. 30-1 at 9-11.) Defendants assert that Plaintiff is prohibited from litigating his claims in this action under the favorable termination rule because an outcome in Plaintiff's favor on these claims would necessarily imply the invalidity of his Tier III disciplinary conviction and sentence. (Dkt. No. 30-1 at 10.)

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that "in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87.

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended *Heck*'s favorable termination rule to disciplinary adjudications, holding that a prisoner's claim for damages was not cognizable under § 1983 where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his [disciplinary] conviction." *Id.* at 643. If a plaintiff whose success would necessarily invalidate said confinement or its duration does not satisfy *Heck*'s favorable termination rule, he must seek relief through the federal habeas corpus statute rather

than through § 1983.  *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006).[10]

        1.        <u>Excessive force claim against Defendants Lamb, Drum, and Hamel</u>

In support of summary judgment on Plaintiff's excessive force claim, Defendants argue that success on this claim "unquestionably would imply the invalidity of his conviction. Plaintiff's claim of excessive force therefore is not cognizable."  (Dkt. No. 25–1 at 6.)  As such, Defendants argue that the favorable termination rule applies and that, as a result, Plaintiff's retaliation claim is barred.

To prevail on a claim of excessive force against prison officials under the Eighth Amendment, the lynchpin inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).  "In determining whether the use of force was wanton and unnecessary," the court should evaluate "the need for application of force, relationship between that need and the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response."  *Id*. at 7 (citation and quotation marks omitted).

Regarding the application of *Heck* to excessive force claims, the Second Circuit has explained that the favorable termination rule does not apply to claims where the alleged "use of excessive force lacks the requisite relationship to the conviction."  *Jackson v. Suffolk Cnty.*

---

[10]     In *Peralta*, the Second Circuit found "that the purpose of the Heck favorable termination requirement is to prevent prisoners from using § 1983 to vitiate collaterally a judicial or administrative decision that affected the overall length of their confinement, and that punishments related to their term of imprisonment, or the procedures that led to them (if the procedural defect at issue was critical to the imposition of the punishment), must be attacked through a habeas petition."  *Id.,* 467 F.3d at 104.

*Homicide Bureau*, 135 F.3d 254, 257 (2d Cir. 1998). For this "requisite relationship" to exist and the favorable termination rule to apply, the particulars of the excessive force claim must be such that the plaintiff's success on said claim *necessarily* implies the invalidity of a prior disciplinary adjudication. *Id.* (emphasis added). If, on the other hand, the plaintiff's success on the excessive force claim in question *would not necessarily* invalidate a prior disciplinary conviction, the favorable termination rule does not apply and the claim is not barred. *Id.* (emphasis added).

Given the nature of his disciplinary convictions and the allegations underlying his excessive force claim, Plaintiff's Tier III adjudication does not bar his excessive force claims in this case. As the basis for Plaintiff's disciplinary convictions, Defendant Pegano found, based on the evidence presented at the Tier III hearing, that Plaintiff was guilty of the following disciplinary violations arising from the May 21, 2010, incident: assault, weapons possession, refusing a direct order, and refusing a search and frisk. (Dkt. No. 30-8 at 3.) None of these convictions preclude a finding that the corrections officers also used excessive force against Plaintiff during this incident. *See Griffin v. Crippen,* 193 F.3d 89, 91-92 (2d Cir. 1999) (appellant's guilty plea on assault charges against corrections officers did not bar Eighth Amendment excessive force claim); *Jeanty v. Cnty. of Orange*, 379 F. Supp. 2d 533, 543-44 (S.D.N.Y. 2005) (denying summary judgment to defendant police officers where plaintiff pleaded guilty to assaulting police officer, but "a jury could reasonably conclude that . . . after [plaintiff] had been subdued, he was subjected to excessive force by the individual defendants"). Because it is possible for a fact finder to accept the validity of Plaintiff's disciplinary convictions and still conclude that Defendants Drum, Hamel, and Lamb used excessive force, Plaintiff's

excessive force claim does not "necessarily imply the invalidity of his conviction[s]." *Edwards,* 520 U.S. at 642. As such, the favorable termination rule is inapplicable to Plaintiff's excessive force claim.

In support of their position that the favorable termination rule does apply to the excessive force claims in this case, Defendants cite *Douglas v. Smith*, No. 05–CV–1000 (GTS/DRH), 2009 WL 789450, 2009 U.S. Dist. LEXIS 130720 (N.D.N.Y. Jan. 26, 2009). In *Douglas*, the plaintiff, an inmate in the custody of DOCCS, faced criminal charges for assault in the second degree based on allegations that he had assaulted a correction officer while being escorted to his cell. 2009 WL 789450, at * 1. As a result of this incident, Douglas pleaded guilty to the lesser charge of attempted assault in the second degree and admitted as part of his plea that he intended "to cause physical injury [to the corrections officer] in order to prevent him from performing a lawful duty." *Id.* at * 2. (internal citations omitted). Following his conviction, Douglas filed a §1983 action alleging that the correction officer had used excessive force during the altercation that was the basis of his criminal conviction. *Id.* at * 1. Ruling on the Defendants' motion for summary judgment, the Court in *Douglas* found that if the version of facts in Douglas' complaint were accepted, the correction officers would not have been performing a lawful duty during the time in question. *Id.* at * 2. Because the correction officer's performance of a lawful duty was conclusively established by Douglas' criminal conviction, success on his excessive force claim would necessarily invalidate Douglas' prior conviction. *Id.* The court thus held that the *Heck/Edwards* favorable termination rule precluded Douglas' excessive force claims and granted Defendants' motion for summary judgment on this ground. *Id.* at * 2-3.

The facts of the present case make *Douglas* inapplicable here. In *Douglas*, the court

found the favorable termination rule applicable due to the specific nature of the plaintiff's underlying conviction in that case. There, the plaintiff was convicted of assault in the second degree, a criminal offense that required him to admit, as part of his guilty plea, that he intended "to cause physical injury [to the corrections officer] in order to prevent him from performing a lawful duty." *Id.* at * 2. As discussed above, a favorable outcome on the plaintiff's excessive force claim would require the plaintiff to prove that the corrections officer's use of force had been "wanton and unnecessary," a finding which would necessarily have invalidated Douglas' prior conviction. *Id.* Here, unlike in *Douglas*, Plaintiff's disciplinary convictions in this case conclusively established only the wrongfulness of Plaintiff's actions; they do not include a finding one way or the other concerning the lawfulness of the corrections officers' actions. As such, a finding that the corrections officers had used excessive force would not affect the validity of Plaintiff's disciplinary convictions. The favorable termination rule is thus inapplicable to Plaintiff's excessive force claim, making summary judgment on this ground inappropriate.

### 2. Failure to intervene claim against Defendant Livermore

Defendants also argue in their motion for summary judgment that Plaintiff's failure to intervene claim against Defendant Livermore is precluded by Plaintiff's disciplinary convictions under the favorable termination rule and should be dismissed. (Dkt. No. 30-1 at 3, n.1.) To prevail on a failure to intervene claim, "the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene." *Henry v. Dinelle*, No. 10–CV–0456 (GTS/DEP), 2011 WL 5975027, at *4, 2011 U.S. Dist. LEXIS 136583, at *13

(N.D.N.Y. Nov. 29, 2011) (citing *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)); *see also Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.").

Here, Plaintiff's prior disciplinary convictions do not preclude his failure to intervene claim in the present action. As with his excessive force claims, the fact that he has been found guilty of these disciplinary violations does not prevent Plaintiff from proving that Defendant Livermore is also liable for failing to intervene to protect Plaintiff from Defendants Drum, Lamb, and Hamel. Because a favorable determination on his failure to intervene claim against Defendant Livermore would not necessarily imply the invalidity of his prior disciplinary convictions, the favorable termination rule does not apply to this claim.

3.    Retaliation claim against Defendant Pegano

Finally, Defendants argue that summary judgment is appropriate on Plaintiff's retaliation claim against Defendant Pegano based on the favorable termination rule. (Dkt. No. 30-1 at 15.)

As the basis for his retaliation claim, Plaintiff alleges that Pegano denied him the assistance necessary to attend his Tier III disciplinary hearing in retaliation for naming him as a defendant in *Dabney v. Lapolt*, No. 10-CV-0519, a civil rights action filed by Plaintiff in 2010. (Dkt. No. 1 at 9.) To prevail on a First Amendment retaliation claim, a plaintiff must establish first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials. *See Gayle v. Gonyea*, 313 F.3d 677 (2d Cir.2002) (alleging false disciplinary report); *Hendricks v. Coughlin*,

114 F.3d 390 (2d Cir.1997) (alleging retaliatory transfers).

Applying the elements above to the factual allegations here, success on Plaintiff's retaliation claim requires him to prove that Pegano's failure to provide him with assistance prior to and during the disciplinary hearing amounted to a deprivation of due process and that Plaintiff's then-pending civil rights suit was a substantial or motivating factor for Pegano's actions. *Id.* Because such a finding would directly undermine Plaintiff's disciplinary convictions, I conclude that success on Plaintiff's retaliation claim would necessarily imply the invalidity of his prior disciplinary convictions by calling into question the fairness of the earlier proceeding and the motivation of the fact finder. *Edwards,* 520 U.S. at 642*; see also Duamutef v. Morris*, 956 F. Supp. 1112, 1116 (S.D.N.Y. 1997) (dismissing plaintiff's First Amendment retaliation claim where such claim, if established, would imply the invalidity of his conviction); *Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996) (dismissing First Amendment free speech claim where success on the claim would "necessarily imply the invalidity of a disciplinary result lengthening the plaintiff's prison sentence"). Based on the foregoing, Plaintiff's retaliation claim is precluded under the favorable termination rule.

4.      Application of *Heck v. Humphrey*: Conclusion

Because success on Plaintiff's retaliation claim would necessarily imply the invalidity of his prior disciplinary convictions, *Heck v. Humphrey*, 512 U.S. 477 (1994), precludes plaintiff's retaliation claim against Defendant Pegano in this action. I therefore recommend that defendant's motion for summary judgment as to Plaintiff's retaliation claim against Defendant Pegano be granted on this basis. Because the favorable termination rule does not apply to Plaintiff's excessive force and failure to intervene claims, I recommend that Defendants' motion for summer

judgment based on *Heck v. Humphrey* be denied as to these claims. However, as discussed

above, summary judgment in Defendants' favor is appropriate as to Plaintiff's excessive force and

failure to intervene claims based on Plaintiff's failure to exhaust his administrative remedies.

     **ACCORDINGLY**, it is

     **RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 30) be

<u>**GRANTED**</u>; and it is further

     **ORDERED** that the Clerk provide Plaintiff with a copy of the following unreported

cases: *Pettus v. McCoy*, No. 04–CV–0471, 2006 WL 2639369, 2006 U.S. Dist. LEXIS 65221;

*Goodson v. Silver*, No. 9:09-cv-0494, 2012 WL 4449937, 2012 U.S. Dist. LEXIS 137177

(N.D.N.Y. Sept. 25, 2012); *Mingues v. Nelson*, No. 96-cv-5396, 2004 WL 324898, 2004 U.S.

Dist. LEXIS 2492 (S.D.N.Y. February 20, 2004); *Murray v. Palmer*, No. 03–CV–1010, 2010

WL 1235591, 2010 U.S. Dist. LEXIS 32014 (N.D.N.Y. Mar. 31, 2010); *Johnson v. Fernandez*,

No. 09–CV–0626, 2011 WL 7629513, 2011 U.S. Dist. LEXIS 154404 (N.D.N.Y. Mar. 1, 2011);

*Jacoby v. Phelix*, No. 07–CV–0872, 2010 WL 1839299, 2010 U.S. Dist. LEXIS 44222

(N.D.N.Y. March 31, 2010); *McNair v. Jones*, No. 01–CV–3253, 2002 WL 31082948, 2002 U.S.

Dist. LEXIS 17409 (S.D.N.Y. Sept. 18, 2002); *Grey v. Sparhawk*, No. 99–CV–9871, 2000 WL

815916, 2000 U.S. Dist. LEXIS 8656 (S.D.N.Y. June 23, 2000); *Tapp v. Kitchen*, No.

02–CV–6658, 2004 WL 2403827, 2004 U.S. Dist. LEXIS 29972 (W.D.N.Y. Oct. 26, 2004);

*Velez v. Kulhmann*, No. 02–CV–6062, 2003 WL 22004899, 2003 U.S. Dist. LEXIS 14684

(S.D.N.Y. Aug. 22, 2003); *Neree v. O'Hara*, No. 9:09-CV-802, 2011 WL 3841551, 2011 U.S.

Dist. LEXIS 96640 (N.D.N.Y. June 20, 2011); *Reynoso v. Swezey*, 238 F. App'x. 660, 663 (2d

Cir. 2007); *Hooks v. Howard*, No. 907-CV-0724, 2010 WL 1235236, 2010 U.S. Dist. LEXIS

30589 (N.D.N.Y. Mar. 30, 2010); *Douglas v. Smith*, No. 05–CV–1000, 2009 WL 789450, 2009 U.S. Dist. LEXIS 130720 (N.D.N.Y. Jan. 26, 2009). *Henry v. Dinelle*, No. 10–CV–0456, 2011 WL 5975027, 2011 U.S. Dist. LEXIS 136583(N.D.N.Y. Nov. 29, 2011); *Andrews v. Cruz*, No. 04-CV-566, 2010 WL 1141182, 2010 U.S. Dist. LEXIS 28124 (S.D.N.Y. Mar. 24, 2010).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: September 4, 2013
     Syracuse, New York

**Thérèse Wiley Dancks**
**U.S. Magistrate Judge**